## COMMONWEALTH vs. KIM DOMINO.

Hampden. February 4, 2013. - June 14, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Parole. Constitutional Law, Assistance of counsel. Practice, Criminal, Sentence, Parole, Amendment of indictment or complaint, Assistance of counsel, Plea, New trial.*

A District Court judge did not err in denying a criminal defendant's motion to vacate that portion of his sentence for his conviction of failing to register as a sex offender that imposed community parole supervision for life (CPSL), where, although the defendant was sentenced to pay a fine, G. L. c. 6, § 178H, required the imposition of CPSL, given that he had previously been convicted of one of the enumerated offenses; further, this court concluded that CPSL must commence immediately upon the imposition of the sentence of a fine. [573-574]

There was no error in the allowance of a motion by the Commonwealth to amend a criminal complaint, where the amendment was one of form rather than substance, in that the addition of the predicate offenses (i.e., conviction of rape of a child and rape of a child, subsequent offense) affected only the consequences of a conviction for failing to register as a sex offender, thereby triggering the imposition of community parole supervision for life (CPSL), rather than altering the substantive crime charged; and where the defendant was not prejudiced by the amendment, in that it was clear from the record that the defendant had more than adequate notice of the Commonwealth's intent to seek imposition of CPSL, and even if the defendant had not had such notice prior to the date of the amendment, the judge offered him a continuance in order to assure him adequate time to prepare for trial following the amendment. [574-576]

The advice of a criminal defendant's counsel not to accept a plea offer did not constitute ineffective assistance, where, in light of the unsettled state of the law at the time of the plea negotiations, it could not be said that counsel's reasonably cautious and prudent advice regarding the possibility of community parole supervision for life (CPSL), a significant collateral consequence, fell measurably below that of an ordinary fallible lawyer; and where the defendant suffered no clear prejudice as a result of his counsel's advice, in that the imposition of CPSL could only have been avoided if the judge made a mistake. [576-579]

A District Court judge did not err in denying a criminal defendant's motion for a new trial on the ground that his guilty plea was not made voluntarily and intelligently, where, although the defendant was a convicted sex offender who had not yet been assigned a final classification level by the Sex

Offender Registry Board, he was nonetheless a sex offender required to register under the sex offender registration act and consequently was subject to criminal penalties under G. L. c. 6, § 178H, for failing to do so. [579-582]

A District Court judge did not abuse her discretion in denying a criminal defendant's motion for a new trial on the ground of newly discovered evidence, based on purportedly recanted statements made by two witnesses, where the judge determined that the affidavits of the witnesses lacked credibility. [582-583]

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on June 16, 2008.

A motion to vacate sentence was heard by *Maureen E. Walsh*, J., and motions to withdraw a guilty plea and for a new trial also were heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Andrew S. Crouch* for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

LENK, J. Having twice been convicted of rape of a child, the defendant is a sex offender subject to the requirements of the Sex Offender Registration and Community Notification Act, G. L. c. 6, §§ 178C-178P (sex offender registration act or act). Following his release from prison in early 2008, and prior to having been assigned a final classification level by the Sexual Offender Registry Board (SORB), the defendant registered with SORB, listing as his permanent address a relative's apartment where he in fact did not reside. He subsequently pleaded guilty to a charge of failing to register as a sex offender, in violation of G. L. c. 6, § 178H (*a*). The District Court judge imposed a fine of $500 and, given the defendant's prior convictions of rape of a child, also imposed community parole supervision for life (CPSL) pursuant to G. L. c. 6, § 178H (*a*) (1).

The defendant moved to vacate the imposition of CPSL and to withdraw his plea on three grounds. He claimed, first, that G. L. c. 6, § 178H (*a*), does not authorize the imposition of CPSL where a sex offender is, as here, sentenced only to payment of a fine. Second, he maintained that, because it was solely by virtue of an impermissible substantive amendment of

the complaint that CPSL could be imposed, it must be vacated. Third, the defendant argued that he received ineffective assistance of counsel in having been dissuaded from accepting a plea offer made before the complaint was amended; had he accepted that offer, he claimed, he would not now be subject to CPSL. The judge denied his motions to vacate the imposition of CPSL and to withdraw his plea, as well as his motion for a new trial, based on claims of newly discovered evidence and the contention that, because he had pleaded guilty to an act that was not in fact a crime, his plea was not voluntary and intelligent.

The defendant appealed from the denial of his motions and we granted his application for direct appellate review. Because we conclude that G. L. c. 6, § 178H (*a*), authorizes the imposition of CPSL where the sentence is a fine; that the amendment of the complaint to add the defendant's prior convictions serving as predicate offenses for the imposition of CPSL was one of form and hence proper; that the defendant has not shown he was provided ineffective assistance of counsel in connection with the plea process; that the judge correctly concluded that a sex offender may be criminally liable for failing to register where, as here, he had been convicted of a sex offense but SORB had not yet determined his final classification level; and that the judge did not abuse her discretion in denying the motion for a new trial on the basis of newly discovered evidence, we affirm the orders of the District Court judge.

1. *Background.* In 2004, the defendant was convicted on an indictment charging two counts of rape of a child, subsequent offense, in violation of G. L. c. 265, § 23.[1] On January 17, 2008, after his release from custody, the defendant submitted to SORB a form listing his permanent address as "homeless." SORB informed him by letter dated March 26, 2008, that, in connection with its impending determinations whether he would have a continuing duty to register as a sex offender and, if so, at what classification level, he had the right to submit documentary evidence for its consideration. In May, 2008, the defendant notified SORB that his home address was a specific address on Sargent Street in Holyoke. SORB would later learn that this was his mailing address only and that he did not live there.

---

[1] In 1989, the defendant pleaded guilty to one count of rape of a child.

When SORB notified the defendant on May 19, 2008, that it was initially recommending that he register as a level three sex offender, the defendant requested a hearing to challenge the recommendation. On December 15, 2008, after an evidentiary hearing, SORB notified the defendant of its final determination that he must register as a level three sex offender.

On June 6, 2008, investigators from the Holyoke police department visited the Sargent Street address. They spoke with Florence Gonzalez, a tenant who lived in the apartment above the one that the defendant claimed as his residence, who told them that she did not know the defendant and that he did not live at the address. Investigators also spoke with Nancy Andujar, who lived in the apartment that the defendant had given as his home address. Andujar, the defendant's former mother-in-law and the grandmother of his children, stated that the defendant had stayed at the house on only one occasion, that he did not live there, and that he only used the house as a mailing address. Officers also spoke with the defendant's children, who stated that he lived somewhere in Springfield. Later that day, the defendant again changed his residency information with SORB, stating that he was homeless, but listing the Sargent Street address as both a mailing address and a work address.

On June 16, 2008, based on the investigators' June 6 visit, a criminal complaint issued against the defendant in the District Court for failing to register as a sex offender, in violation of G. L. c. 6, § 178H (a). The "penalty" portion of the complaint stated in pertinent part that "[l]ifetime community parole supervision is also required upon conviction if . . . the defendant's underlying offense was G. L. c. 265, §§ 13B, 13F, 22A, 23, 24B, or 26 . . . ." The complaint, however, did not set forth the defendant's prior convictions of rape of a child in violation of G. L. c. 265, § 23. The prosecutor made defense counsel aware of these prior convictions on or about October 17, 2008. Plea discussions ensued and an offer was extended shortly thereafter, involving either a fine or probation; the offer remained on the table for some time. Worried about the possibility that CPSL might also be imposed, defense counsel advised his client not to accept the plea offer. On August 19, 2009, the judge allowed the Commonwealth's motion to amend the complaint,

over objection, by adding that the defendant had previously been convicted of rape of a child, and that his failure to register "triggers [the] penalty of lifetime community parole."[2]

On August 31, 2009, the defendant tendered a guilty plea, requesting a sentence of a $500 fine, while the Commonwealth recommended a ninety-day period of incarceration and imposition of CPSL. The judge ordered the defendant to pay a fine of $500 and imposed CPSL. In light of her sentence, the judge offered the defendant the opportunity to withdraw his plea and to proceed to trial. The defendant chose not to withdraw his plea.

2. *Discussion.* a. *Motion to vacate CPSL or withdraw plea.* The defendant claims error in the denial of his motion to vacate the imposition of CPSL or to withdraw his plea. He maintains that the judge lacked statutory authority to impose CPSL where, as here, a defendant is punished only by the imposition of a fine; that the complaint was impermissibly amended; and that he received ineffective assistance of counsel in the plea process. We consider each claim in turn.

i. *Imposition of CPSL where the only sentence is a fine.* General Laws c. 6, § 178H (*a*)(1), provides, in pertinent part:

> "A person convicted under this paragraph, who has been adjudicated or convicted of any of the offenses set forth in section 13B, 13B ½, 12B ¾, 13F, 22A, 22B, 22C, 23, 23A, 23B, 24B, and 26 of chapter 265 . . . shall, in addition to terms of imprisonment authorized by this section, be punished by a term of [CPSL], to be served under the jurisdiction of the parole board . . . . The sentence of [CPSL] shall commence immediately upon the expiration of the term of imprisonment imposed upon such person by the court or upon such person's release from probation or parole supervision or upon the expiration of a continuance without a finding or upon discharge from commitment to the treatment center pursuant to section 9 of chapter 123A, whichever first occurs."

Because a fine is not among the enumerated punishments in the

---

[2]See *Commonwealth* v. *Pagan,* 445 Mass. 161, 169 (2005) ("If a defendant is made susceptible to a prescribed statutorily enhanced penalty because of a former conviction, the predicate offense must be alleged in the complaint or indictment").

final sentence of this provision, the defendant maintains that CPSL may not be imposed when the sentence for failing to register as a sex offender is merely a fine.

The defendant ignores, however, the first part of the quoted language, which requires that CPSL be imposed on any person who previously has been convicted of one of the enumerated offenses, including G. L. c. 265, § 23, of which the defendant has been twice convicted. See *Commonwealth* v. *Williamson*, 462 Mass. 676, 681-682 (2012) (provision's "language, on its face, requires the mandatory imposition of CPSL for those convicted under [it]").[3] The final sentence of this provision, upon which the defendant relies, addresses only when the mandatory sentence of CPSL shall commence, not whether it should be imposed, a matter already settled by the earlier language. That a fine is not among the enumerated sentences in the final sentence of this provision leaves open only the question when CPSL should commence in the circumstances where a fine alone is imposed. That question is readily answered. The Legislature plainly intended CPSL to commence as soon as the sex offender is no longer under supervision through other means, such as incarceration or probation. See G. L. c. 6, § 178H (*a*) (1). Accordingly, where, as here, a defendant is both mandatorily subject to CPSL and sentenced to a fine, CPSL must commence immediately upon imposition of that sentence, since the defendant is not otherwise subject to supervision pursuant to the conviction.

Reading the statutory language in this straightforward manner comports with the clear and broad command of the first part of the statutory provision and the protective purpose of the sex offender registration act as a whole. See *Commonwealth* v. *Hendricks*, 452 Mass. 97, 101 (2008), quoting *Commonwealth* v. *McLeod*, 437 Mass. 286, 290 (2002) ("statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature"). There was no error in the judge's determination that G. L. c. 6, § 178H (*a*), authorized her to impose CPSL on sentencing the defendant to pay a $500 fine.

ii. *Amendment of the complaint.* The defendant maintains that

---

[3]Indeed, the defendant concedes as much in his brief: "As long as the complaint contained a qualifying predicate offense, the imposition of CPSL was statutorily mandated, requiring the [c]ourt to impose it."

it was impermissible to amend the complaint under Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979), and that the imposition of CPSL must thus be vacated.

"Under Mass. R. Crim. P. 4(d), [*supra*], a judge has discretion to allow an amendment of an indictment if the amendment is one of form, not substance, and if the amendment will 'not result in prejudice.' "[4] *Commonwealth* v. *Miranda*, 441 Mass. 783, 787 (2004), quoting *Commonwealth* v. *Knight*, 437 Mass. 487, 491-492 (2002). "Whether an amendment is one of substance or form turns upon double jeopardy principles. As explained in *Commonwealth* v. *Snow*, 269 Mass. 598, 609-610 (1930), if an acquittal on the original charge would not bar prosecution of the amended charge, the amendment is one of substance." *Commonwealth* v. *Bynoe*, 49 Mass. App. Ct. 687, 691 (2000).

Here, the addition of the predicate offenses, viz., the conviction of rape of a child, and rape of a child subsequent offense, in violation of G. L. c. 265, § 23, thereby triggering imposition of CPSL, affected only the consequences of a conviction under G. L. c. 6, § 178H (*a*), for failing to register as a sex offender; it did not alter the substantive crime charged. Cf. *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000) ("the repeat-offender statutes are sentence enhancement provisions only and do not identify a freestanding crime"). An acquittal on the original complaint, therefore, would undoubtedly bar prosecution of the amended complaint, since both charged identical offenses. Accordingly, the amendment to include the predicate offense was of form, not substance. See *Commonwealth* v. *Miranda, supra* at 788 ("the amendment of [an] indictment to include [a] repeat-offender component . . . was a matter of form, not substance"), citing *Commonwealth* v. *Knight, supra* at 492 and *Commonwealth* v. *Fernandes, supra.*

In addition, the defendant was not prejudiced by the amendment. The purpose of a complaint or indictment is "to furnish

---

[4]The amendment also must not "materially change[] the work of the grand jury." *Commonwealth* v. *Knight*, 437 Mass. 487, 492 (2002), quoting *Commonwealth* v. *Benjamin*, 358 Mass. 672, 679 (1971). That concern is not implicated here, as the defendant was not indicted by a grand jury.

the accused with such a description of the charge against him as will enable to him to make his defence." *Commonwealth* v. *Montanino*, 409 Mass. 500, 512 (1991), quoting *United States* v. *Cruikshank*, 92 U.S. 542, 558 (1875). It is clear from the record that the defendant had more than adequate notice of the Commonwealth's intent to seek imposition of CPSL. At the hearing on the motion to amend, the defendant stated that the reason that he had been unable to reach a plea agreement was specifically due to the Commonwealth's insistence on CPSL. The judge observed, without dispute by counsel, that the defendant "had notice even at the arraignment" of the defendant's prior convictions and the corresponding requirement of CPSL, and had had notice for at least one month prior to the hearing that the Commonwealth was planning to file the motion to amend. Even were we to assume that the defendant had not had notice prior to the date of the amendment, the judge offered him a continuance in order to assure him adequate time to prepare for trial following the amendment. There was no error in allowing the Commonwealth's motion to amend the complaint.

iii. *Ineffective assistance of counsel.* The defendant maintains that the imposition of CPSL should have been vacated, or that he should have been allowed to withdraw his plea and receive a new trial, because he was afforded ineffective assistance of counsel during the plea negotiation process. More specifically, before the complaint was amended to assure compliance with *Commonwealth* v. *Pagan*, 445 Mass. 161 (2005) (*Pagan*), the Commonwealth made a plea offer whereby the defendant would plead guilty and receive either a fine or probation. Defense counsel, however, believing that CPSL could automatically be imposed upon conviction, advised the defendant, who wished to accept the offer, not to do so. The defendant contends that this advice was incorrect, since CPSL could not have been imposed under the original complaint, which did not expressly allege a predicate offense that would trigger it. See *Commonwealth* v. *Kateley*, 461 Mass. 575, 584 (2012) (*Kateley*) ("the predicate condition or offense for imposing CPSL . . . must be alleged in the charging document"). He maintains that, had counsel not given him incorrect advice, he could have pleaded guilty before the complaint was amended, received a fine or probation, and avoided CPSL.

To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's behavior fell measurably below that of an ordinary fallible lawyer and that he was prejudiced as a result. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant has not established either.

Defense counsel was without the benefit of our 2012 decision in *Kateley*, *supra*, when advising the defendant in 2008 and 2009 whether to accept a plea offer. While our decision in that case clarified that CPSL could not have been imposed on the original complaint, our 2005 decision in *Pagan*, *supra*, addressed only the situation where CPSL is sought on the basis that a defendant is a repeat offender, rather than pursuant to a conviction of failure to register. *Pagan*, *supra* at 170 ("art. 12 requires explicit indictment of [or complaint against] a defendant as a repeat offender, and that a defendant be convicted as such, before he is subject to mandatory CPSL as a category 3 offender under G. L. c. 265, § 45"). Indeed, we acknowledged in *Kateley*, *supra* at 583, that, in the wake of *Pagan*, "there seemingly is some uncertainty whether the art. 12 analysis of enhanced penalty set forth in [*Pagan*] applies to violations of the registration requirement."

Given the unsettled state of the law at the time of the plea negotiations, we cannot say that defense counsel's reasonably cautious and prudent advice regarding the possibility of the imposition of CPSL, a significant collateral consequence, fell measurably below that of an ordinary fallible lawyer. See *Commonwealth* v. *Saferian*, *supra*. That a later court decision may have proved this advice to be incorrect does not render otherwise reasonable advice ineffective. See *Commonwealth* v. *Mahar*, 442 Mass. 11, 17-19 (2004) ("We do not require attorneys to foretell the future: the attorney's advice was reasonable, and it did not become incompetent because a subsequent judicial opinion made clear an aspect of the offense that was previously less certain").

Moreover, the defendant suffered no clear prejudice as a result of his counsel's advice. It is far from certain that the defendant would have successfully evaded the imposition of CPSL had he accepted the Commonwealth's plea offer prior to the amendment of the complaint. Because the imposition of

CPSL was a statutorily mandated collateral consequence of the defendant's conviction, G. L. c. 6, § 178H (*a*) (1), the judge, sua sponte, could well have ordered the complaint to be amended so as to bring it into compliance with *Pagan, supra,* and thereby trigger the requisite imposition of CPSL. See Mass. R. Crim. P. 4 (*d*) ("Upon his own motion or the written motion of either party, a judge may allow amendment of the form of a complaint").

It is of course possible that the judge might have imposed CPSL without first ordering the amendment of the complaint. Had she done so, the defendant would have had a meritorious claim on appeal. See *Pagan, supra* at 174 (vacating sentence of CPSL where imposed pursuant to indictment that failed to set forth defendant's predicate offenses). Alternatively, it is conceivable that the judge might have ignored the statutory requirement that CPSL be imposed and have sentenced the defendant only to a fine. In either event, the defendant's contention that he was prejudiced by his counsel's advice rests entirely on the likelihood of a legal misstep by the judge. Otherwise put, the imposition of CPSL could only have been avoided if the judge made a mistake, something that is hardly to be assumed.

To demonstrate prejudice, a defendant asserting ineffective assistance of counsel must show a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cullen* v. *Pinholster,* 131 S. Ct. 1388, 1403 (2011), quoting *Strickland* v. *Washington,* 466 U.S. 668, 694 (1984). "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen* v. *Pinholster, supra,* quoting *Harrington* v. *Richter,* 131 S. Ct. 770, 792 (2011). A claim of prejudice which, as here, relies not only on counsel's purportedly incorrect legal advice, but also on a prediction that a judge will err, does not move beyond the level of the merely conceivable. Cf. *Strickland* v. *Washington, supra* at 695 ("An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice . . . and the like. . . . The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision").

In these circumstances, we cannot say that the judge, who

had also taken the plea, abused her discretion in denying the defendant's motion to vacate the imposition of CPSL due to ineffective assistance of counsel.

b. *Motion for a new trial.* The defendant moved for a new trial on two grounds: first, because he had pleaded guilty to an act that was not a crime, his plea was not voluntary and intelligent; and second, because there was newly discovered evidence in the form of witnesses who recanted prior statements.

i. *A sex offender "required to register."* The defendant asserts that his guilty plea was not made intelligently because, as a convicted sex offender who had yet to be assigned a final classification level by SORB, under the terms of the statute, he was not "[a] sex offender required to register." G. L. c. 6, § 178H (*a*). Hence, his failure to register was not a crime and, it follows, his plea could not have been intelligent. It would be manifestly unjust on this view not to permit him to withdraw his plea and to receive a new trial.[5] See *Commonwealth* v. *Berrios,* 447 Mass. 701, 708 (2006), cert. denied, 550 U.S. 907 (2007), quoting *Commonwealth* v. *DeMarco,* 387 Mass. 481, 482 (1982) ("Although the disposition of [a motion to withdraw a guilty plea] is within the discretion of the judge, a rigorous standard must be applied and a judge may only allow such a motion 'if it appears that justice may not have been done' "); *Commonwealth* v. *Tennison,* 440 Mass. 553, 566 (2003), quoting Commonwealth v. Russin, 420 Mass. 309, 318 (1995) (denial of such motion "will not be reversed unless it is manifestly unjust"). This claim rests upon a distinction that the defendant perceives in the sex offender registration act between a sex offender and a "sex offender required to register"; he maintains that he was at all relevant times only the former and not the latter.[6]

---

[5]A "plea is valid only when the defendant offers it voluntarily, with sufficient awareness of the relevant circumstances, *Brady* v. *United States,* 397 U.S. 742, 748-749, 758 (1970), and with the advice of competent counsel." *Commonwealth* v. *Fernandes,* 390 Mass. 714, 715-716 (1984). "[A] guilty plea is void if it is involuntary and unintelligent for any reason." *Commonwealth* v. *Berrios,* 447 Mass. 701, 708 (2006), cert. denied, 550 U.S. 907 (2007), quoting *Huot* v. *Commonwealth,* 363 Mass. 91, 96 (1973).

[6]General Laws c. 6, § 178H (*a*), provides:

"A sex offender required to register pursuant to this chapter who knowingly: (i) fails to register; (ii) fails to verify registration information;

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words . . . considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Commonwealth* v. *De'Amicis*, 450 Mass. 271, 276 (2007), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). "Where possible, we construe the various provisions of a statute in harmony with another, recognizing that the Legislature did not intend internal contradiction." *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009).

The sex offender registration act provides "an extensive registration scheme for sex offenders, in order to protect the public from 'the danger of recidivism posed by sex offenders' and to aid law enforcement officials in protecting their communities by providing them with information." *Commonwealth* v. *Rosado*, 450 Mass. 657, 659-660 (2008), quoting *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 769 (2006). As defined in the act, a "[s]ex offender" is "a person who resides, has secondary addresses, works or attends an institution of higher learning in the [C]ommonwealth and who has been convicted of a sex offense." G. L. c. 6, § 178C.

The act imposes a "presumption that sex offenders must register." *Commonwealth* v. *Ronald R.*, 450 Mass. 262, 264 (2007). "The requirement to register with [SORB], triggered by a conviction of an enumerated sex offense, is only the first step in the statutory registration process." *Commonwealth* v. *Ventura*, 465 Mass. 202, 207 n.4 (2013) (*Ventura*). Thereafter, SORB considers whether a sex offender will have a continuing obligation to register, and determines the scope of that requirement, based on the sex offender classification level it assigns. *Id.*, citing G. L. c. 6, §§ 178K-178L; 803 Code Mass. Regs. § 1.06 (2004); 803 Code Mass. Regs. § 1.25 (2008); 803 Code Mass. Regs. §§ 1.28-1.30 (2004).

The defendant maintains that "a sex offender required to register," as used in the act, means sex offenders who have

---

(iii) fails to provide notice of a change of address; or (iv) who knowingly provides false information shall be punished in accordance with this section."

been assigned a final classification level by SORB; those required to register do not include convicted sex offenders who have yet to receive such a classification. The defendant would have us distinguish, therefore, between the initial requirement to register with SORB as triggered by a conviction of a sex offense, and the continuing obligation to register imposed as a result of a final classification by SORB.

Such a distinction is not supported by the language of the act, which makes plain that the registration requirement commences with the conviction of a sex offense and that SORB thereafter either determines that this obligation to register continues or grants the sex offender relief from it. See, e.g., G. L. c. 6, § 178K (2) (*d*) (SORB "may, upon making specific written findings that [the defendant does not pose] a risk of reoffense or a danger to the public and the reasons therefor, relieve such sex offender of any further obligation to register." See also *Roe* v. *Attorney Gen.*, 434 Mass. 418, 425 (2001) (stating that, under act, SORB "may determine that an offender does not pose a danger or risk of reoffense and relieve him of any further registration requirement"). Rather than imposing a new registration requirement, a SORB classification simply defines the scope[7] of the requirement already imposed upon conviction of an enumerated sex offense. See *Ventura, supra.*

We must presume that the Legislature intended the term "register" to have a consistent meaning throughout the sex offender registration act, whether in G. L. c. 6, § 178H (*a*) (failure to register), or in G. L. c. 6, § 178E (*l*) (registration requirement imposed upon conviction of sex offense). See *Commonwealth* v. *Wynton W.*, 459 Mass. 745, 747 (2011), quoting *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188-189 (1969) ("Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section' ").

That G. L. c. 6, § 178H (*a*), imposes criminal penalties specifically on "sex offenders required to register," rather than on

---

[7]Under G. L. c. 6, § 178F 1/2, a sex offender classified as level two or three must register annually in person at the local police station, while a level one sex offender may register by mail. G. L. c. 6, § 178F.

"sex offenders" broadly, does no more than take into account the statutory mechanisms by which a sex offender may be relieved of the otherwise mandatory obligation to register. All "sex offenders" are presumptively "sex offenders required to register" unless they have been affirmatively relieved of that requirement, either through a court order pursuant to G. L. c. 6, § 178E (*e*) or (*f*), or through a later determination by SORB pursuant to G. L. c. 6, § 178K (2) (*d*). See *Ventura, supra* at 206. The Legislature necessarily drafted the act to be applicable only to "sex offenders required to register," i.e., those who have not been relieved of the obligation to register by one of the three methods discussed, *supra*, lest offenders who had been relieved of the requirement face prosecution for failing to comply with it. A "sex offender required to register," therefore, is not a sex offender who has yet to be classified by SORB, as the defendant maintains, but rather is a sex offender who has not been granted relief from the registration requirement either by a court or by SORB.

It is undisputed that the defendant was not granted such relief. Indeed, due to the nature of his two prior offenses, he was statutorily foreclosed from such relief. See G. L. c. 6, § 178E (*f*); G. L. c. 6, § 178K (*d*). The defendant was thus "a sex offender required to register," and, consequently, subject to criminal penalties under G. L. c. 6, § 178H (*a*), for failing to do so.

ii. *Recanted statements.* Finally, the defendant claims that a new trial is required based on purportedly recanted statements made by two witnesses. "A defendant seeking a new trial on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Commonwealth* v. *Grace*, 397 Mass. 303, 305 (1986). "In considering a motion for a new trial based on newly discovered evidence, it [is] [within] the judge's discretion to determine the weight and import of affidavits submitted . . . ." *Commonwealth* v. *Thomas*, 399 Mass. 165, 167 (1987). "The abuse of discretion standard is not altered when the newly discovered evidence is an alleged recantation by a material witness." *Commonwealth* v. *Santiago*, 458 Mass. 405, 414 (2010). In such circumstances, "the duty of the trial judge is to give grave consideration to the credibility of the

witness's new testimony." *Commonwealth* v. *Robertson*, 357 Mass. 559, 562 (1970). The judge appropriately may consider whether, if the witness testified at a new trial, "his credibility would be damaged in such a way by earlier testimony that his new testimony would be relatively worthless." *Commonwealth* v. *Ortiz*, 393 Mass. 523, 537 (1984).

In support of his motion for a new trial, the defendant offered the affidavits of Nancy Andujar and Florence Gonzalez, recanting portions of the version of events they previously had relayed to police and to an assistant district attorney. At the evidentiary hearing on the motion, however, in response to questioning by the judge, Gonzalez testified that, due to a language barrier, she "didn't understand [the affidavit] too well" before she signed it. Gonzalez testified also, contrary to a statement in her affidavit, that police had shown her a picture of the defendant when they came to her house to ask her about the defendant. Andujar invoked her rights under the Fifth Amendment to the United States Constitution and did not testify. The judge determined that the affidavits lacked credibility and denied the defendant's motion. We cannot say that this was an abuse of discretion.

> *Order denying motion to vacate community parole supervision for life affirmed.*
>
> *Order denying motion to vacate plea affirmed.*
>
> *Order denying motion for new trial affirmed.*